# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1295

_____

Shirley Phelps-Roper,                    *
                                         *
          Plaintiff - Appellant,         *
                                         *
     v.                                  *
                                         *
Jeremiah Nixon,                          *
                                         *
          Defendant - Appellee,          *
                                         *
Mark Goodwin,                            *
                                         *
          Defendant,                     *
                                         *   Appeal from the United States
Matt Blunt,                              *   District Court for the Western
                                         *   District of Missouri.
          Defendant - Appellee.          *
                                         *
_____                     *
                                         *
Thomas Jefferson Center for the          *
Protection of Free Expression,           *
                                         *
          Amicus on Behalf of            *
          Appellant,                     *
                                         *
Judicial Watch,                          *
                                         *
          Amicus on Behalf of            *
          Appellee.                      *

_____

Submitted: October 15, 2007
Filed: December 6, 2007
_____

Before BYE, BOWMAN, and SMITH, Circuit Judges.
_____

BYE, Circuit Judge.

Shirley Phelps-Roper brought suit in the Western District of Missouri, challenging the validity of sections 578.501 and 578.502 of the Missouri revised statutes under the freedom of speech protection of the First Amendment of the U.S. Constitution.[1]   Phelps-Roper requested a preliminary injunction to prevent enforcement of section 578.501 until the statute could be reviewed; the district court denied her motion, holding she did not demonstrate she was likely to succeed on the merits, did not demonstrate irreparable harm, and the public interest weighed in favor of upholding the challenged statutory provisions.  This appeal followed.  We reverse.

I

Phelps-Roper is a member of the Westboro Baptist Church (WBC) in Topeka, Kansas. Phelps alleges members of her church believe God is punishing America for what WBC considers the sin of homosexuality by killing Americans, including soldiers.  As part of her religious duties, she believes she must protest and picket at

_____

[1]Section 578.502 is a fall-back provision to be enacted if section 578.501 is declared unconstitutional.  It is not ripe for review at this time since we are only reviewing the propriety of a preliminary injunction, not determining the constitutionality of the statute.

certain funerals, including the funerals of United States soldiers, to publish the church's religious message: that God's promise of love and heaven for those who obey him in this life is counterbalanced by God's wrath and hell for those who do not. Phelps believes funerals are the only place where her religious message can be delivered in a timely and relevant manner.[2]

On August 5, 2005, Phelps-Roper and other WBC members held a picket and protest near the location of the funeral of Army Spc. Edward Lee Myers in St. Joseph, Missouri. In direct response to the protest, Missouri enacted section 578.501, which criminalizes picketing "in front or about" a funeral location or procession, and section 578.502, which criminalizes picketing within 300 feet of a funeral location or procession, in the event section 578.501 is declared unconstitutional. Section 578.501 states, in pertinent part:

(1) This section shall be known as "Spc. Edward Lee Myers' Law."

(2) It shall be unlawful for any person to engage in picketing or other protest activities in front of or about any location at which a funeral is held, within one hour prior to the commencement of any funeral, and until one hour following the cessation of any funeral. Each day on which a violation occurs shall constitute a separate offense. Violation of this section is a class B misdemeanor, unless committed by a person who has previously pled guilty to or been found guilty of a violation of this section, in which case the violation is a class A misdemeanor.

_____

[2]Although the exact content of WBC's group speech at the funerals of soldiers is not part of the record to date, in previous funeral protests the WBC has conveyed messages including "Thank God for Dead Soldiers," "God Blew Up The Troops," "God Hates Fags," and "AIDS Cures Fags." See The Westboro Baptist Church Home Page, http://www.godhatesfags.com/main/aboutwbc.html (last visited October 26, 2007) (describing the messages on the "large, colorful signs" they display during their "daily peaceful sidewalk demonstrations opposing the homosexual lifestyle of soul-damning, nation-destroying filth.")

(3) For the purposes of this section, "funeral" means the ceremonies, processions and memorial services held in connection with the burial or cremation of the dead.

Mo. Rev. Stat. § 578.501.

Phelps-Roper brought suit under 42 U.S.C. § 1983 alleging these laws invade her First Amendment rights. She seeks: (1) entry of a declaratory judgment finding sections 578.501 and 578.502 unconstitutional; (2) issuance of a preliminary and permanent injunction enjoining enforcement of sections 578.501 and 578.502; and (3) an award of costs, including reasonable attorneys fees, pursuant to 42 U.S.C. §1988. On appeal, Phelps-Roper appeals the denial of her motion for preliminary injunction against Jeremiah Nixon, Attorney General of Missouri, and Matt Blunt, Governor of Missouri.[3]

II

The standard of review for the denial of a motion for preliminary injunction is abuse of discretion. Entergy, Arkansas, Inc. v. Nebraska, 210 F.3d 887, 898 (8th Cir.

---

[3]Phelps-Roper does not appeal with respect to Mark Goodwin, the prosecuting attorney for Carroll County, Missouri. Goodwin and Phelps-Roper filed a stipulation for entry of consent judgment, which would permanently enjoin Goodwin, in his official capacity as prosecuting attorney for Carroll County, and his employees, representatives, agents, servants, assigns, and successors, from enforcing or attempting to enforce §§ 578.501 and 578.502. The district court deferred ruling on the proposed consent judgment until a final judgment has been entered as to the constitutionality of Missouri's funeral protest statutes. Notwithstanding the agreement between Phelps-Roper and the local prosecutor, we have jurisdiction over this appeal between Phelps-Roper and the governor and attorney general of Missouri. See Reprod. Health Servs. v. Nixon, 428 F.3d 1139, 1145 (8th Cir. 2005); but see id. at 1146-48 (Bye, J., dissenting) (concluding Article III jurisdiction is lacking over a Missouri action to enjoin enforcement of an allegedly unconstitutional statute, where the local prosecutor charged with enforcing the statute is not part of the appeal).

2000); Kirkeby v. Furness, 52 F.3d 772, 774 (8th Cir. 1995) (reversing district court's denial of a motion for preliminary injunction to enjoin City of Fargo from enforcing an anti-picketing ordinance). A court considering a motion for preliminary injunction must consider (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury in granting the injunction will inflict on the other party; (3) the probability of the movant succeeding on the merits; and (4) the public interest. Id. citing Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The district court weighed these considerations and concluded Phelps-Roper was not entitled to a preliminary injunction. We have weighed these same considerations and come to a contrary conclusion.

## III

Peaceful picketing is an expressive activity protected by the First Amendment. Olmer v. Lincoln, 192 F.3d 1176, 1179 (8th Cir. 1999). It is well-settled law that a "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality). If Phelps-Roper can establish a substantial likelihood of success on the merits of her First Amendment claim, she will also have established irreparable harm as the result of the deprivation. See Marcus v. Iowa Pub. Television, 97 F.3d 1137, 1140-41 (8th Cir. 1996); Kirkeby, 52 F.3d at 775. Likewise, the determination of where the public interest lies also is dependent on the determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to protect constitutional rights. Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998) (quotation omitted); Kirkeby, 52 F.3d at 775 (citing Frisby v. Schultz, 487 U.S. 474, 479 (1988)). The balance of equities, too, generally favors the constitutionally-protected freedom of expression. In a First Amendment case, therefore, the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue. McQueary v. Stumbo, 453 F. Supp.2d 975, 979 (E.D. Ky. 2006) (granting preliminary injunction to WBC precluding

enforcement of Kentucky statute imposing time, place and manner restrictions on gatherings near funerals) (citing Connection Distrib. Co., 154 F.3d at 288).

We begin with an assessment of the likelihood of success on the merits. At this stage in the litigation, we only assess preliminarily whether Phelps-Roper has a substantial likelihood of prevailing on the merits of her claim. We do not determine the constitutionality of the Missouri statute at issue. See Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 371 (8th Cir. 1991) (stating, in considering the likelihood of the movant prevailing on the merits, a court does not decide whether the movant will ultimately win). While "an injunction cannot issue if there is no chance on the merits," Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005), the Eighth Circuit has rejected a requirement that a "party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits." Dataphase, 640 F.2d at 113. The question is whether Phelps-Roper has a "fair chance of prevailing." Heartland Acad. Cmty. Church v. Waddle, 335 F.3d 684, 690 (8th Cir. 2003).

When analyzing the merits of Phelps-Roper's claim, the district court correctly concluded the statute's speech restrictions are content-neutral and subjected the statute to intermediate judicial scrutiny. See Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 642, 653 (1994). We reject Phelps-Roper's contention that section 578.501 is content-based because it targets funeral picketing and was enacted for the purpose of silencing her speech in particular. The plain meaning of the text controls and the legislature's specific motivation for passing a law is not relevant, so long as the provision is neutral on its face. City of L.A. v. Alameda Books, Inc., 535 U.S. 425, 448 (2002) (Kennedy, J., concurring) (stating "whether a statute is content neutral or content based is something that can be determined on the face of it . . . ."); Hill v. Colorado, 530 U.S. 703, 724-25 (2000) (stating "the contention that a statute is 'viewpoint based' simply because its enactment was motivated by the conduct of the partisans on one side of a debate is without support" and finding a statute content-

neutral despite its being enacted to end harassment outside clinics by abortion opponents); Frisby, 487 U.S. at 482 (1988) (finding statute content-neutral despite its being enacted in response to anti-abortion protesters).

Section 578.501 regulates traditional public fora. A traditional public forum is one traditionally used as a forum for expression, such as a public street or a sidewalk. Boos v. Barry, 485 U.S. 312, 318 (1988); Olmer, 192 F.3d at 1179. While we recognize a cemetery is a nonpublic forum,[4] section 578.501 restricts expressive activity not just within or on the premises of a cemetery or a church, but also on traditional public fora such as the adjacent public streets and sidewalks. The statute must therefore satisfy the standard of review for traditional public fora.

A content-neutral time, place and manner regulation may be imposed in a public forum if it: (1) serves a significant government interest; (2) is narrowly tailored; and (3) leaves open ample alternative channels of communication. Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); Veneklase v. City of Fargo, 248 F.3d 738, 744 (8th Cir. 2001) (en banc) (upholding the constitutionality of a Fargo ordinance prohibiting the targeted picketing of a residence as a content neutral time, place, manner restriction).

A

The district court found the state has a significant interest in preserving and protecting the sanctity and dignity of memorial and funeral services, as well as protecting the privacy of family and friends of the deceased during a time of mourning and distress. Phelps-Roper v. Nixon, 504 F. Supp. 2d 691, 696 (W.D. Mo. 2007).

---

[4]Warner v. City of Boca Raton, 420 F.3d 1308, 1310 n.1 (11th Cir. 2005); Griffin v. Sec'y of Veterans Affairs, 288 F.3d 1309, 1322 (Fed. Cir. 2002); Warren v. Fairfax County, 196 F.3d 186, 201 (4th Cir. 1999); Jackson v. City of Stone Mountain, 232 F. Supp. 2d 1337, 1353 (N.D. Ga. 2002).

The Supreme Court has not addressed this issue, but has recognized the state's interest in protecting citizens from unwanted communications while in their homes, Frisby, 487 U.S. at 482, and when otherwise "captive," Madsen v. Women's Health Ctr., 512 U.S. 753, 768 (1994). Two other district courts, which recently analyzed the constitutionality of similar funeral protest statutes, extended Frisby and acknowledged the state has an interest in protecting mourners, which were found to be a captive audience, from unwanted speech during a burial or funeral. See Phelps-Roper v. Taft, No. 1:06 CV 2038, 2007 WL 915109, at *4-5 (N.D. Ohio Mar. 23, 2007) (finding the state interest was significant); McQueary v. Stumbo, 453 F. Supp.2d 975, 992 (E.D. Ky. 2006) (assuming, without finding, for the purpose of preliminary injunction, the state has an interest in protecting funeral attendees from unwanted communications so obtrusive they are impractical to avoid).

We note our own opinion in Olmer v. Lincoln, 192 F.3d 1176, 1178 (8th Cir. 1999), which affirmed a preliminary injunction enjoining the enforcement of an ordinance, which "restrict[ed] to certain areas the 'focused picketing' of churches and other religious premises thirty minutes before, during, and thirty minutes after any scheduled religious activity" because it violated the First Amendment. In Olmer, we held the government has no compelling interest in protecting an individual from unwanted speech outside of the residential context. Id. at 1182 (refusing to allow other locations, even churches, to claim the same level of constitutionally protected privacy afforded to the home by Frisby). We stated:

> As the Supreme Court said in Frisby, 'the home is different,' and, in our view, unique. Allowing other locations, even churches, to claim the same level of constitutionally protected privacy would, we think, permit government to prohibit too much speech and other communication. We recognize that lines have to be drawn, and we choose to draw the line in such a way as to give the maximum possible protection to speech, which is protected by the express words of the Constitution.

Id. (citation omitted). Because of our holding in Olmer, we conclude Phelps-Roper has a fair chance of proving any interest the state has in protecting funeral mourners from unwanted speech is outweighed by the First Amendment right to free speech.

B

For a statute to be narrowly tailored, it must not burden substantially more speech than necessary to further the state's legitimate interests. Bd. of Tr. of State Univ. of New York v. Fox, 492 U.S. 469, 478 (1989); Frisby, 487 U.S. at 485. An overbroad statute may be challenged on its face even though a more narrowly drawn statute would be valid as applied to the party in the case before it. City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 798 (1984). To prevail, a plaintiff must show the challenged law either "could never be applied in a valid manner" or it is "written so broadly that [it] may inhibit the constitutionally protected speech of third parties." Id. The district court did not engage in a meaningful analysis of whether section 578.501 is narrowly tailored or overbroad; it found only that the statutory language has plain meaning, which a person of ordinary intelligence could ascertain.

Since we do not decide the merits of Phelps-Roper claim, we decline to engage in a rigorous analysis of whether section 578.501 is overbroad. We do point out the cases upon which the district court relied to support section 578.501's "in front or about" language, e.g., Frisby, 487 U.S. 474 (1988) (upholding ordinance concerning targeted picketing "in front of" a particular residence); Douglas v. Brownwell, 88 F.3d 1511 (8th Cir. 1996) (upholding a ban on picketing "before, about, or immediately adjacent to" a residence), are distinguishable because they involve residences and fixed locations. Section 578.501, by contrast, defines a "funeral" to include "processions" held in connection with burial and cremation.[5] Mo. Rev. Stat.

---

[5]A funeral procession may be as few as two cars, according to statute. Mo. Ann. Stat. § 194.500.3.

§ 578.501(3). Its "floating" buffer-zones, therefore, provide citizens with no guidance as to what locations will be protest and picket-free zones and at what times. See Phelps-Roper v. Taft, 2007 WL 915109 at *6 (holding the language of the statute applicable to floating buffer zones was substantially overbroad and burdened substantially more speech than necessary to serve the state's interest). In addition, Section 578.501 does not limit itself to activity which targets, disrupts, or is otherwise related to the funeral, memorial service or procession.[6] See Olmer, 192 F.3d at 1180 (finding an ordinance overbroad because it "purports to make the carrying of signs at the indicated times and places unlawful, no matter what the signs say or depict, and this prohibition is much broader than necessary. . . . [T]he ordinance bans certain forms of communication even if all of those to whom it is directed in fact wish to hear it."); McQueary, 453 F. Supp. 2d at 995-96 (finding Kentucky funeral protest statute, which prohibited all congregating, picketing, patrolling, demonstrating or entering property within 300 feet of a funeral whether or not such activities were visible or audible to, interfered with, or were authorized by the funeral attendees, restricted "substantially more speech than is necessary to prevent interferences with a funeral or to protect funeral attendees from unwanted, obtrusive communications that are otherwise impractical to avoid.").

We conclude there is enough likelihood Phelps-Roper will be able to prove section 578.501 is not narrowly tailored or is facially overbroad to the point she has a fair chance of prevailing on the merits of her claim.

C

The remaining requirement the state must satisfy to defend its time, place and manner restrictions is that such restrictions must leave open ample alternative

---

[6]We note the Eighth Circuit has found the term "picketing" to include a wide range of activities, including prayer. Veneklase, 248 F.3d at 743; Douglas, 88 F.3d at 1521.

channels for communication of the information.  See Ward, 491 U.S. at 791.  As the Supreme Court has stated, "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place."  Schneider v. New Jersey, 308 U.S. 147, 151-52 (1939).

The Eighth Circuit has found other anti-picket regulations did not leave open ample alternative channels for communication of the information.  When addressing whether a permanent injunction should issue in Kirkeby, the Court reasoned:

> [P]laintiffs wish to express an opinion about an individual to that individual and others, and they wish to direct their message at that individual. . . . Therefore, allowing them to picket in the town square or even the next block does not satisfy the second Ward requirement [of leaving open ample alternative channels for communication]. These time limits do not give the plaintiffs enough opportunity to direct their intended message at their intended recipients.

Kirkeby v. Furness, 92 F.3d 655, 662 (8th Cir. 1996).  By analogy, Phelps-Roper presents a viable argument that those who protest or picket at or near a military funeral wish to reach an audience which can only be addressed at such occasion and to convey to and through such an audience a particular message.  She has a fair chance of proving section 578.501 fails to afford open, ample and adequate alternative channels for the dissemination of her particular message.

IV

Because we conclude Phelps-Roper has demonstrated a fair chance of prevailing on the merits of her claim, we find she will suffer irreparable injury if the preliminary injunction is not issued.  The injunction will not cause substantial harm to others, and the public is served by the preservation of constitutional rights.  The district court abused its discretion when it concluded the balance of harms weighed

-11-

toward denying the motion for a preliminary injunction based on its erroneous determination as to Phelps-Roper being unlikely to succeed on the merits.

We emphasize again we do not today determine the constitutionality of section 578.501. We hold only that Phelps-Roper is entitled to a preliminary injunction while the constitutionality of section 578.501 is thoroughly reviewed. The contrary judgment of the district court is reversed.

_____