# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-3197

_____

Shirley L. Phelps-Roper;                           *
Megan Phelps-Roper,                                *
                                                   *
            Plaintiffs - Appellees,                *
                                                   *
      v.                                           *
                                                   *
City of Manchester, Missouri,                      *   Appeal from the United States
                                                   *   District Court for the
            Defendant - Appellant.                 *   Eastern District of Missouri.
                                                   *
_____                            *        [PUBLISHED]
                                                   *
United States of America,                          *
                                                   *
      Amicus on Behalf of Appellant,               *
                                                   *
Christina Wells; Thomas Jefferson                  *
Center for the Protection of Free                  *
Expression,                                        *
                                                   *
      Amici on Behalf of Appellees.                *

_____

Submitted: June 15, 2011
     Filed: October 5, 2011

_____

Before MURPHY and SMITH, Circuit Judges, and READE,[1] District Judge.

_____

PER CURIAM.

Shirley and Megan Phelps-Roper brought this First Amendment challenge to a Manchester, Missouri ordinance that regulates protests near funerals. On cross motions for summary judgment, the district court[1] considered the ordinance as originally adopted and as twice amended. It ruled in favor of the Phelps-Ropers, awarding them nominal damages and enjoining enforcement of the ordinance. The City of Manchester appeals, arguing that the Phelps-Ropers lack standing to challenge the ordinance, that the Phelps-Ropers' challenges to earlier versions of the ordinance are moot, and that the ordinance is a constitutionally valid content neutral time, place, or manner regulation. The Phelps-Ropers respond that Manchester's ordinance is unconstitutional under our court's prior decision in Phelps-Roper v. Nixon, 545 F.3d 685 (8th Cir. 2008).

The Phelps-Ropers are members of the Westboro Baptist Church (WBC), which believes that God is punishing America for tolerating homosexuality. WBC expresses its views by protesting at funerals, including those of American soldiers. Its members hold signs with messages such as "Thank God for Dead Soldiers" and "God Hates You" at protests staged near funerals. Snyder v. Phelps, 131 S. Ct. 1207, 1213 (2011).

In 2007 Manchester adopted an ordinance in § 210.264 of its municipal code regulating protests at funerals in response to the WBC's activities. The ordinance was amended twice, and its final form prohibits "picketing or other protest activities . . .

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

within three hundred (300) feet of any residence, cemetery, funeral home, church, synagogue, or other establishment during or within one (1) hour before or one (1) hour after the conducting of any actual funeral or burial service at that place." Manchester's ordinance now closely resembles a similar statute that the Sixth Circuit upheld over First Amendment challenges in Phelps-Roper v. Strickland, 539 F.3d 356, 373 (6th Cir. 2008).

After the Phelps-Ropers challenged the constitutionality of the Manchester ordinance, the district court concluded that they had standing to bring their claims and that their challenges to earlier versions of the ordinance were not moot. The court decided that the second and third versions of the ordinance were content based, but that even if they were content neutral, they would have still violated the First Amendment. The district court concluded that each version violated the First Amendment, permanently enjoined enforcement of the ordinance, and awarded nominal damages to the Phelps-Ropers. Manchester challenges all of these decisions in its appeal.

We agree that the Phelps-Ropers had standing to challenge the ordinance. Manchester's ordinance specifically targets the Phelps-Ropers' conduct, Minn. Citizens Concerned for Life v. Fed. Election Comm'n, 113 F.3d 129, 131 (8th Cir. 1997), and Manchester did not disavow intentions to enforce it. See St. Paul Area Chamber of Commerce v. Gaertner, 439 F.3d 481, 486 (8th Cir. 2006). The Phelps-Ropers thus have "some reason in fearing prosecution" under the ordinance. Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 302 (1979). Their challenges to the two earlier versions of the ordinance are moot, however, because Manchester amended the ordinance in response to related judicial decisions. See, e.g., Strickland, 539 F.3d at 373. It cannot therefore reasonably be concluded that Manchester might now reinstate provisions in conflict with those precedents. See Epp v. Kerrey, 964 F.2d 754, 755 (8th Cir. 1992). Moreover, the Phelps-Ropers could challenge any unlikely reinstatement. Id.

The only justiciable question before the court at this time is whether Manchester's current ordinance violates the First Amendment. The district court concluded that the ordinance was a content based regulation. Whether an ordinance is content based is determined by examining the plain meaning of its text. Nixon, 545 F.3d at 691. Manchester's ordinance prohibits "picketing" and "other protest activities," which it defines as conduct "disruptive or undertaken to disrupt or disturb a funeral or burial service." The ordinance does not favor some topics or viewpoints over others and it "appl[ies] equally to all demonstrators, regardless of viewpoint." Hill v. Colorado, 530 U.S. 703, 719 (2000) (citation omitted). It is not a "regulation of speech" but rather "a regulation of the places where some speech may occur." Id. That a court may need to conduct a "cursory examination" of a speaker's words to determine if she engaged in picketing or other protests regulated by Manchester's ordinance does not transform this otherwise neutral ordinance into a content based regulation. Id. at 721–22. The district court thus erred in concluding that the ordinance was a content based regulation. See id. at 719–22.

The district court alternatively held that the ordinance could not survive because it was not "narrowly tailored to serve a significant governmental interest." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). Relying on Nixon, 545 F.3d at 692, and Olmer v. City of Lincoln, 192 F.3d 1176, 1182 (8th Cir. 1999), the district court concluded that Manchester had no significant interest "in protecting funeral attendees from unwanted communication." It reasoned that Olmer had "unequivocally refused to recognize the government's significant interest in protecting unwilling listeners outside the residential context." Nixon had in fact concluded that "'the home is different,' and, in our view, unique" and therefore "other locations, even churches, [could not] claim the same level of constitutionally protected privacy." 545 F.3d at 692 (quoting Olmer, 192 F.3d at 1182.) We recognize that the Sixth Circuit came to a different conclusion in Strickland, 539 F.3d at 362–66, in upholding an ordinance closely resembling the one at issue here, but we agree that the district court was required to follow our precedent in Nixon.

Accordingly, we affirm the judgment of the district court.

MURPHY, Circuit Judge, concurring in the judgment.

While I concur in the judgment, I write separately because this case might be analyzed differently but for our decision in Phelps-Roper v. Nixon, 545 F.3d 685 (8th Cir. 2008). There, a panel of our court analyzed a quite different funeral protest statute and concluded that Phelps-Roper was "likely to prove any interest the state has in protecting funeral mourners from unwanted speech is outweighed by the First Amendment right to free speech." Id. at 692. Relying on Olmer v. City of Lincoln, 192 F.3d 1176, 1182 (8th Cir. 1999), the panel reasoned that "the government has no compelling interest in protecting an individual from unwanted speech outside of the residential context." 545 F.3d at 692.

The Manchester funeral protest statute in this case is significantly different from that in Nixon and in fact quite like that in Phelps-Roper v. Strickland, 539 F.3d 356 (6th Cir. 2008). In Strickland, the Sixth Circuit determined that the government had "an important interest in the protection of funeral attendees, because a deceased's survivors have a privacy right 'in the character and memory of the deceased.'" Id. at 366. It reasoned that individuals "mourning the loss of a loved one share a privacy right similar to individuals in their homes or individuals entering a medical facility." Id. at 364–65. That is because "mourners cannot easily avoid unwanted protests without sacrificing their right to partake in the funeral or burial service." Id. at 366.

Whether the City of Manchester has a significant interest in regulating protests near funerals is important in dealing with the First Amendment rights asserted by the Phelps-Ropers. The First Amendment right to free speech "includes the right to attempt to persuade others to change their views, and may not be curtailed simply because the speaker's message may be offensive to his audience." Hill v. Colorado, 530 U.S. 703, 716 (2000). The government has no general interest in protecting

listeners from unwelcome speech at all places and times, id., but the First Amendment right to free speech is not absolute. It has long been recognized that "[t]o enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself." Kovacs v. Cooper, 336 U.S. 77, 88 (1949). Speech "is not equally permissible in all places and at all times." Frisby v. Schultz, 487 U.S. 474, 479 (1988) (citation omitted). As the Supreme Court explained in Hill:

> States and municipalities plainly have a substantial interest in controlling the activity around certain public and private places. For example, we have recognized the special governmental interests surrounding schools, courthouses, polling places, and private homes.

530 U.S. at 728 (citations omitted).

In National Archives & Records Administration v. Favish, 541 U.S. 157, 167–68 (2004), the Court considered the social and cultural significance of funerals and burial rites. While upholding a law allowing families to prevent release under the Freedom of Information Act of "photographs showing the condition of [their loved one's] body at the scene of death," id. at 160, the Court explained:

> Family members have a personal stake in honoring and mourning their dead and objecting to unwarranted public exploitation that, by intruding upon their own grief, tends to degrade the rites and respect they seek to accord to the deceased person who was once their own.

Id. at 168. The Court emphasized that by preventing release of photographs, the government was protecting the "privacy of the living" and the privilege of surviving family members "to protect their feelings, and to prevent a violation of their own rights in the character and memory of the deceased." Id. at 168–69 (quotation omitted).

The Supreme Court found a significant governmental interest in protecting the rights of citizens in their homes from unwanted communication, Frisby, 487 U.S. at 485, and later extended that interest to protect patients entering medical facilities. Hill, 530 U.S. at 716. Frisby and Hill are useful guideposts, establishing that the government's interest in protecting captive audiences will have "special force" in the home, see Hill, 530 U.S. at 717, but that it is not limited to the residential context. Id.

In Snyder v. Phelps, 131 S. Ct. 1207, 1218 (2011), the Court suggested there are likely other locations outside of the home and health facilities where the government can permissibly regulate First Amendment activities. In Synder, the Court was asked to consider whether the First Amendment shielded Westboro Baptist Church funeral protesters from liability for certain tort claims. Id. at 1213. It decided that those protestors could not be held liable under a tort theory because they had been peacefully expressing issues of public concern without violating any law regulating protests at funerals. Id. at 1220. The funeral attendees in Synder were not captive to unwanted communication because the main area used by the protestors was approximately 1000 feet from the site of the funeral, the attendees could see no more than the tops of the picket signs, and the picketing did not interfere with the funeral. Id. at 1218–20. The Court indicated, however, that protesters' "choice of where and when to conduct [their] picketing is not beyond the Government's regulatory reach—it is 'subject to reasonable time, place, or manner restrictions' . . . . " Id. at 1218 (citation omitted).

I respectfully suggest that Synder provides the proper method of analysis for deciding whether the Manchester ordinance is constitutional. Was the Phelps-Ropers' choice of where and when to conduct their picketing beyond Manchester's regulatory reach? Did the ordinance place unreasonable time, place, or manner restrictions on the Phelps-Ropers' picketing activities? Should funeral attendees be required to

"undertake Herculean efforts to escape the cacophony of political protests"? <u>Hill</u>, 530 U.S. at 716 (citation omitted).

The "vulnerable physical and emotional conditions," <u>id.</u> at 729, are the same, if not greater, for funeral attendees than for a patient seeking medical treatment. Manchester's ordinance reflected its significant interest in protecting funeral attendees because survivors have a right to honor "the character and memory of the deceased." <u>Strickland</u>, 539 F.3d at 366. To conclude otherwise would leave funeral attendees "practically helpless to escape . . . interference with [their] privacy," <u>Kovacs</u>, 336 U.S. at 87, at a moment when they "have a personal stake in honoring and mourning their dead." <u>Nat'l Archives & Records Admin.</u>, 541 U.S. at 168.

_____