MURPHY, Circuit Judge,
concurring in the judgment.
While I concur in the judgment, I write separately because this case might be analyzed differently but for our decision in Phelps-Roper v. Nixon, 545 F.3d 685 (8th Cir.2008). There, a panel of our court analyzed a quite different funeral protest statute and concluded that Phelps-Roper was “likely to prove any interest the state has in protecting funeral mourners from unwanted speech is outweighed by the First Amendment right to free speech.” Id. at 692. Relying on Olmer v. City of Lincoln, 192 F.3d 1176, 1182 (8th Cir.1999), the panel reasoned that “the government has no compelling interest in protecting an individual from unwanted speech outside of the residential context.” 545 F.3d at 692.
The Manchester funeral protest statute in this case is significantly different from that in Nixon and in fact quite like that in Phelps-Roper v. Strickland, 539 F.3d 356 (6th Cir.2008). In Strickland, the Sixth Circuit determined that the government had “an important interest in the protection of funeral attendees, because a deceased’s survivors have a privacy right ‘in the character and memory of the deceased.’” Id. at 366. It reasoned that individuals “mourning the loss of a loved one share a privacy right similar to individuals in their homes or individuals entering a medical facility.” Id. at 364-65. That is because “mourners cannot easily avoid unwanted protests without sacrificing their right to partake in the funeral or burial service.” Id. at 366.
Whether the City of Manchester has a significant interest in regulating protests near funerals is important in dealing with the First Amendment rights asserted by the Phelps-Ropers. The First Amendment right to free speech “includes the right to attempt to persuade others to change their views, and may not be curtailed simply because the speaker’s message may be offensive to his audience.” Hill v. Colorado, 530 U.S. 703, 716, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). The government has no general interest in protecting listeners from unwelcome speech at all places and times, id., but the First Amendment right to free speech is not absolute. It has long been recognized that “[t]o enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself.” Kovacs v. Cooper, 336 U.S. 77, 88, 69 S.Ct. 448, 93 L.Ed. 513 (1949). Speech “is not equally permissible in all places and at all times.” Frisby v. Schultz, 487 U.S. 474, 479, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (citation omitted). As the Supreme Court explained in Hill:
States and municipalities plainly have a substantial interest in controlling the activity around certain public and private places. For example, we have recognized the special governmental interests surrounding schools, courthouses, polling places, and private homes.
530 U.S. at 728, 120 S.Ct. 2480 (citations omitted).
In National Archives & Records Administration v. Favish, 541 U.S. 157, 167-68, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004), the Court considered the social and cultural significance of funerals and burial rites. While upholding a law allowing families to prevent release under the Freedom of Information Act of “photographs showing the condition of [their loved one’s] body at the *818 scene of death,” id. at 160, 124 S.Ct. 1570, the Court explained:
Family members have a personal stake in honoring and mourning their dead and objecting to unwarranted public exploitation that, by intruding upon their own grief, tends to degrade the rites and respect they seek to accord to the deceased person who was once their own.
Id. at 168, 124 S.Ct. 1570. The Court emphasized that by preventing release of photographs, the government was protecting the “privacy of the living” and the privilege of surviving family members “to protect their feelings, and to prevent a violation of their own rights in the character and memory of the deceased.” Id. at 168-69, 124 S.Ct. 1570 (quotation omitted).
The Supreme Court found a significant governmental interest in protecting the rights of citizens in their homes from unwanted communication, Frisby, 487 U.S. at 485, 108 S.Ct. 2495, and later extended that interest to protect patients entering medical facilities. Hill, 530 U.S. at 716, 120 S.Ct. 2480. Frisby and Hill are useful guideposts, establishing that the government’s interest in protecting captive audiences will have “special force” in the home, see Hill, 530 U.S. at 717, 120 S.Ct. 2480, but that it is not limited to the residential context. Id.
In Snyder v. Phelps, — U.S. -, 131 S.Ct. 1207, 1218, 179 L.Ed.2d 172 (2011), the Court suggested there are likely other locations outside of the home and health facilities where the government can permissibly regulate First Amendment activities. In Synder, the Court was asked to consider whether the First Amendment shielded Westboro Baptist Church funeral protesters from liability for certain tort claims. Id. at 1213. It decided that those protestors could not be held liable under a tort theory because they had been peacefully expressing issues of public concern without violating any law regulating protests at funerals. Id. at 1220. The funeral attendees in Synder were not captive to unwanted communication because the main area used by the protestors was approximately 1000 feet from the site of the funeral, the attendees could see no more than the tops of the picket signs, and the picketing did not interfere with the funeral. Id. at 1218-20. The Court indicated, however, that protesters’ “choice of where and when to conduct [their] picketing is not beyond the Government’s regulatory reach — it is ‘subject to reasonable time, place, or manner restrictions’.... ” Id. at 1218 (citation omitted).
I respectfully suggest that Synder provides the proper method of analysis for deciding whether the Manchester ordinance is constitutional. Was the Phelps-Ropers’ choice of where and when to conduct their picketing beyond Manchester’s regulatory reach? Did the ordinance place unreasonable time, place, or manner restrictions on the Phelps-Ropers’ picketing activities? Should funeral attendees be required to “undertake Herculean efforts to escape the cacophony of political protests”? Hill, 530 U.S. at 716, 120 S.Ct. 2480 (citation omitted).
The “vulnerable physical and emotional conditions,” id. at 729, 120 S.Ct. 2480, are the same, if not greater, for funeral attendees than for a patient seeking medical treatment. Manchester’s ordinance reflected its significant interest in protecting funeral attendees because survivors have a right to honor “the character and memory of the deceased.” Strickland, 539 F.3d at 366. To conclude otherwise would leave funeral attendees “practically helpless to escape ... interference with [their] privacy,” Kovacs, 336 U.S. at 87, 69 S.Ct. 448, at a moment when they “have a personal stake in honoring and mourning their *819 dead.” Nat’l Archives & Records Admin., 541 U.S. at 168, 124 S.Ct. 1570.