# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2601

_____

| | | |
|---|---|---|
| Shirley L. Phelps-Roper, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Gary Troutman, in his capacity as City | * | |
| Administrator of Bellevue, Nebraska; | * | |
| Leonard Houloose, in his capacity as | * | |
| Chief of the Papillion Police | * | |
| Department, | * | |
| | * | |
| Defendants, | * | Appeal from the United States |
| | * | District Court for the |
| Dave Heineman, in his capacity as | * | District of Nebraska. |
| Governor of the State of Nebraska; | * | |
| Jon Bruning, in his capacity as Attorney | * | [PUBLISHED] |
| General of the State of Nebraska, | * | |
| | * | |
| Defendants - Appellees | * | |
| | * | |
| L. Kenneth Polikov, in his capacity as | * | |
| Sarpy County Attorney; John W. Stacey | * | |
| in his capacity as Chief of the Bellevue | * | |
| Police Department; City of Bellevue, | * | |
| Nebraska; Gary Mixan, in his capacity | * | |
| as Mayor of the City of Bellevue; Kay | * | |
| Dammast, in her capacity as City Clerk | * | |
| of Bellevue, Nebraska, | * | |
| | * | |
| Defendants, | * | |

Donald Kleine, in his capacity as     *
Douglas County Attorney; Alex Hayes,  *
in his capacity as Chief of the Omaha  *
Police Department; Joe Smith, in his   *
capacity as Madison County Attorney;  *
William L. Mizner, in his capacity as   *
Chief of the Norfolk Police            *
Department; Nathan Cox, in his      *
capacity as Cass County Attorney;    *
William Brueggemann, in his capacity  *
as Sheriff of Cass County, also known  *
as Bill; Honorable Todd J. Hutton, in  *
his capacity as Sarpy County Judge;   *
Nebraska Supreme Court; John/Jane   *
Does, in their official capacities,     *
                               *
       Defendants - Appellees.   *
                               *
_____       *

United States of America,         *
                               *
       Amicus on Behalf of Appellee.  *

_____

Submitted: May 11, 2011
Filed: October 20, 2011

_____

Before MURPHY, BEAM, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Shirley Phelps-Roper brought this action to enjoin the enforcement of the Nebraska Funeral Picketing Law (NFPL), arguing that it violates her First Amendment right to free speech. She appeals a district court order denying her

-2-

motion for a preliminary injunction. Bound by a previous panel decision involving a similar statute, the same procedural posture on appeal, and the identical plaintiff, Phelps-Roper v. Nixon, 545 F.3d 685 (8th Cir. 2008), we reverse.

Phelps-Roper is a member of the Westboro Baptist Church (WBC), a group which believes that God is killing Americans as punishment for its tolerance of homosexuality. The WBC espouses its beliefs in protests staged at funerals, including those of fallen American soldiers. They hold large signs with slogans such as "God Hates Fags" and "Thank God for Dead Soldiers."

The NFPL restricts picketing at a funeral from one hour before the funeral until two hours afterward. Neb. Rev. Stat. § 28-1320.03(1). Picketing is defined as "protest activities . . . within three hundred feet of a cemetery, mortuary, church or other place of worship during a funeral."[1] Id. § 28-1320.02(2). The NFPL does not apply to "funeral processions on public streets or highways." Id. § 28-1320.02(1).

In her motion for a preliminary injunction, Phelps-Roper claimed that the NFPL violates the First Amendment both on its face and as applied to her. The district court first determined that the law was a content neutral speech regulation and therefore applied intermediate scrutiny. See Nixon, 545 F.3d at 690–91. It concluded the NFPL survived that level of scrutiny because it "is narrowly tailored to serve a significant government interest and leaves ample alternative channels for communications that are protected by the First Amendment." See id. at 691. With respect to the as applied challenge, the district court found that Phelps-Roper had not shown that she had been treated differently from other protesters. Having concluded that Phelps-Roper's claims were unlikely to succeed, the district court denied her motion for a preliminary injunction.

---

[1]The NFPL was recently amended to expand the buffer zone to 500 feet. As that amendment has not yet taken effect, we examine the law in its current form.

-3-

Phelps-Roper contends that the district court should have applied strict scrutiny to the NFPL and, in the alternative, that the NFPL cannot not survive intermediate scrutiny because it does not serve a significant government interest, is not narrowly tailored, and does not afford her ample alternative channels of communication.

We review the denial of a preliminary injunction for an abuse of discretion, which occurs when "the district court rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." Planned Parenthood v. Rounds, 530 F.3d 724, 733 (8th Cir. 2008) (en banc). Before enjoining the "implementation of a duly enacted state statute," a court must "make a threshold finding that [the movant] is likely to prevail on the merits." Id. at 732–33. When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied. See Nixon, 545 F.3d at 690.

The NFPL regulates speech in traditional public fora, and the level of scrutiny to be applied depends on whether or not the regulation is content neutral. Id. at 691. In deciding if a statute is content neutral, the "plain meaning of the text controls, and the legislature's specific motivation . . . is not relevant, so long as the provision is neutral on its face." Id. Like the statute at issue in Nixon, 545 F.3d at 690–91, the NFPL is content neutral because it regulates all protest activities within a certain distance and time frame, regardless of content or viewpoint. See also Hill v. Colorado, 530 U.S. 703, 723–24 (2000); Phelps-Roper v. Strickland, 539 F.3d 360–61 (6th Cir. 2008). The district court therefore correctly applied intermediate scrutiny to inquire whether the statute was narrowly tailored to serve a significant government interest and left ample alternative channels of communication. See Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

The district court concluded that Nebraska had a significant interest in protecting the privacy of family members attending a loved one's funeral. It reasoned

-4-

that the captive audience doctrine, which recognizes such an interest in protecting unwilling listeners from unavoidable speech, applied in the funeral context. See Frisby v. Schultz, 487 U.S. 474, 484–85 (1988) (applying doctrine to private residences); Hill, 530 U.S. at 718 (applying doctrine to patients entering medical facilities); Strickland, 539 F.3d at 362–66 (applying doctrine to funeral attendees).

Phelps-Roper argues that this conclusion is undercut by our opinion in Nixon, where we doubted that her First Amendment speech rights were outweighed by state interests "in preserving and protecting the sanctity and dignity of memorial and funeral services" and "protecting the privacy of family and friends of the deceased during a time of mourning and distress." 545 F.3d at 691–92.

In Phelps-Roper v. City of Manchester, Missouri, we recognized Nixon's conclusion that the "home is different, and, in our view, unique" and that "other locations, even churches, [cannot] claim the same level of constitutionally protected privacy." --- F.3d --- , 2011 WL 4578431, at *2 (8th Cir. Oct. 5, 2011) (citing Nixon, 545 F.3d at 692) (internal quotations omitted). On that basis, we affirmed the district court's determination that a Missouri funeral protest statute violated the First Amendment. Id.

We agree that the district court here was required to follow our Nixon precedent, which concluded that the government was unlikely to prove a significant interest in protecting funeral attendees. The Nixon panel cited our court's earlier refusal to extend application of the captive audience doctrine beyond the residential context. Olmer v. City of Lincoln, 192 F.3d 1176, 1182 (8th Cir. 1999). The district court's efforts to distinguish Nixon, see Phelps-Roper v. Heineman, 720 F. Supp. 2d 1090, 1098-1100 & n.2 (D. Neb. 2010), are not persuasive. That the Nixon panel erroneously used the term "compelling interest" rather than "significant interest" in describing Olmer is not a sufficient basis to avoid circuit precedent that expressly applied the "holding in Olmer." Nixon, 545 F.3d at 692; cf. Olmer, 192 F.3d at 1182

-5-

(concluding that the city lacked a "significant governmental interest"). Nor can Nixon be distinguished based on the nature of the mourners protected. The Missouri statute, like the Nebraska statute, protected family members attending a relative's funeral. Nixon was premised on the panel's view, derived from Olmer, that the government has no significant interest in protecting unwilling listeners outside the context of a home.

We do not make a final determination of the constitutional issues. Nixon, 545 F.3d at 694. Rather, we conclude consistent with Nixon that Phelps-Roper has shown a likelihood of success sufficient to warrant a preliminary injunction pending a full examination of the merits. See id. at 694. We therefore need not address appellant's as applied challenge to the statute.

Since Phelps-Roper was likely to succeed on the merits of her facial challenge under Nixon, the district court should have enjoined enforcement of the NFPL. The order denying a preliminary injunction is reversed, and the case is remanded to the district court for further proceedings.

MURPHY, Circuit Judge, concurring.

While our earlier decision in Phelps-Roper v. Nixon, 545 F.3d 685 (8th Cir. 2008), requires reversal in this case, I believe that Nixon's resolution of the competing legal interests arising in that case should be reconsidered by the full court. Among the significant interests are the First Amendment rights asserted by members of the Westboro Baptist Church and the potential government interest in protecting captive funeral mourners from unwelcome intrusions and messages. Funerals "are a sign of the respect a society shows for the deceased and for the surviving family members." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 168 (2004). As already noted in my concurring statement in Phelps-Roper v. City of Manchester, Missouri, ---F.3d---, No. 10-3197, 2011 WL 4578431, *4 (8th Cir. Oct. 5, 2011), the Supreme

Court has suggested that the Church's "choice of where and when to conduct its picketing is not beyond the Government's regulatory reach—it is 'subject to reasonable time, place, or manner restrictions' that are consistent with the standards announced in [the] Court's precedents." Snyder v. Phelps, 131 S. Ct. 1207, 1218 (2011) (citation omitted). Our full court should consider whether and to what extent the significant governmental interest in protecting individuals attempting to enter a medical facility from unwanted speech, Hill v. Colorado, 530 U.S. 703, 729 (2000), can be extended to funeral mourners.

BEAM, Circuit Judge, concurring in the judgment.

I join the court's per curiam opinion and also Judge Murphy's and Judge Colloton's concurrences. In doing so, I agree that this court's decision in Phelps-Roper v. Nixon, 545 F.3d 685, 691-92 (8th Cir. 2008), compels reversal of the district court.

The Nixon opinion refused to recognize a state's significant and legitimate interest in protecting mourners at funerals from unwanted speech, limiting its scrutiny to communications directed only toward a residential target. My concern, however, focuses upon the failure of the Nixon court to place within its balancing equation at least two additional expressly stated constitutional interests other than the free "speech" mandate enumerated in the First Amendment, that is "free exercise [of religion]" and the "right of . . . peaceabl[e] . . . assembl[y]." U.S. Const., amend. I, cl. 1, 3.

Taking its cue from almost identical language in Olmer v. City of Lincoln, 192 F.3d 1176, 1182 (8th Cir. 1999), Nixon, 545 F.3d at 692, recognized only a constitutionally protected right of privacy arising from inferences emanating within "the penumbras of the Bill of Rights," Roe v. Wade, 410 U.S. 113, 152 (1973), and relegates it to an inferior level of importance when balanced against "speech." This,

says the <u>Nixon</u> court, is because speech is "protected by the *express* words of the Constitution."  <u>Nixon</u>, 545 F.3d at 692 (emphasis added) (quoting <u>Olmer</u>, 192 F.3d at 1182).  While this is likely a correct analysis of this limited inquiry under existing Supreme Court precedent, it does not address my disaffinity for <u>Nixon</u>'s scrutiny analysis.

At the outset, I consider <u>Nixon</u>'s evaluation of <u>Olmer</u> and <u>Olmer</u>'s purported support of <u>Nixon</u>'s result.

I do not believe that <u>Olmer</u> says that "the government has no compelling interest in protecting an individual from unwanted speech outside of the residential context" as contended by <u>Nixon</u>.  <u>Id.</u>  Clearly, <u>Olmer</u>, 192 F.3d at 1182, accords the home a "unique" status among other locations, reflecting that "[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society," <u>Frisby v. Schultz</u>, 487 U.S. 474, 484 (1988) (quotation omitted).  But, neither <u>Frisby</u> nor <u>Olmer</u> state that the government has "no compelling interest" in protecting individuals from unwanted speech under all other circumstances.  Indeed, <u>Hill v. Colorado</u>, 530 U.S. 703 (2000), is to the contrary.  While reinforcing the privacy of the home as a sanctuary against unwanted speech, <u>Hill</u> recognized protections from such speech in confrontational situations such as at  health care facilities offering constitutionally sanctioned abortions.  <u>Id.</u> at 717.  But, as above indicated, in <u>Frisby</u>, <u>Olmer</u>, and <u>Nixon</u>, the constitutional balancing test pitted freedom of speech as protected by express words of the Constitution, solely against a court-fashioned constitutionally protected right of privacy.  <u>Frisby</u>, 487 U.S. at 484, <u>Olmer</u>, 192 F.3d at 1182, <u>Nixon</u>, 545 F.3d at 692.  I suggest that the limited nature of this encounter causes the <u>Nixon</u> judgment to fall short.

For example, the Supreme Court "has recognized [an expressive] right to associate for the purpose of engaging in those activities protected by the First

Amendment–speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties." Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984). Expressive association is protected as an instrument for the better protection of other First Amendment rights that are exercised most effectively when people are able to combine their voices. Roberts, 468 U.S. at 622. Funerals are arguably such expressive events because they "are a sign of the respect a society shows for the deceased and for the surviving family members." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 168 (2004). Funerals are also, in most instances, deeply satisfying religious observances. This is especially true, I believe, when the deceased is one who has offered his or her life in our nation's service without derogation of any kind, by word or deed, of any of the religious or other beliefs and proclivities of appellant and her fellow travelers.

To date, as best I can tell, guarding the right of expressive association has been limited to protecting these activities from government interference. However, the value of such group expression can be more fully and, I believe, constitutionally protected if the state shields such expression from private disruption under circumstances such as we have in this case. At least one court, in a somewhat different context, has said the state has an interest "in guaranteeing citizens the right to participate in events or demonstrations of their own choosing without being subjected to interference by other citizens." Sanders v. United States, 518 F. Supp. 728, 730 (D.D.C. 1981). The Supreme Court's latest foray into the matter of balancing these difficult issues, Snyder v. Phelps, 131 S. Ct. 1207 (2011), does not counsel to the contrary. Even though Snyder involves tort claims against parties essentially identical to appellant in this case, arising from similar speech activities during a funeral at Westminster, Maryland, the Supreme Court addresses matters of relevance to this appeal. Although Maryland had no law similar to the Nebraska statute at the time of the events in Snyder, the Court said

"[e]ven protected speech is not equally permissible in all places and at all times." [Frisby, 487 U.S. at 479] (quoting Cornelius v. NAACP Legal Defense & Ed. Fund, Inc., 473 U.S. 788, 799 (1985)). Westboro's choice of where and when to conduct its picketing is not beyond the Government's regulatory reach–it is "subject to reasonable time, place, or manner restrictions" that are consistent with the standards announced in this Court's precedents. Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984). Maryland now has a law imposing restrictions on funeral picketing, Md. Crim. Law Code Ann. § 10-205, as do 43 other States and the Federal Government. . . . To the extent these laws are content neutral [which is the case in Nebraska], they raise very different questions from the tort verdict at issue in this case. Maryland's law [which now prohibits picketing within 100 feet of a funeral service], however, was not in effect at the time of the events at issue here, *so we have no occasion to consider how it might apply to facts such as those before us, or whether it or other similar regulations are constitutional.*

Id. at 1218 (first alteration in original) (emphasis added).

Accordingly, I believe that Snyder now opens the door for this circuit to look again at the issues presented in this litigation, and it should do so. While I concede that I am bound by Nixon's precedent, I reject, as earlier indicated, Nixon's limitations. I believe that it is constitutionally sound, in the balancing test we must make in a case such as this, to employ other expressly enumerated First Amendment rights as we decide whether to erect a constitutional shield for the family and friends of this deceased against the self-centered verbal and written thrusts of appellant in the name of free speech.

COLLOTON, Circuit Judge, concurring.

For reasons explained in the per curiam opinion, this panel is bound by *Phelps-Roper v. Nixon*, 545 F.3d 685, 691-92 (8th Cir. 2008), to reverse the judgment of the

district court.  Five judges voted to rehear *Nixon* en banc, *id*. at 685 n.\*, and I continue to favor reconsideration of that precedent.

_____