BEAM, Circuit Judge,
concurring in the judgment.
I join the court’s per curiam opinion and also Judge Murphy’s and Judge Colloton’s concurrences. In doing so, I agree that this court’s decision in Phelps-Roper v. Nixon, 545 F.3d 685, 691-92 (8th Cir.2008), compels reversal of the district court.
The Nixon opinion refused to recognize a state’s significant and legitimate interest in protecting mourners at funerals from unwanted speech, limiting its scrutiny to communications directed only toward a residential target. My concern, however, focuses upon the failure of the Nixon court to place within its balancing equation at least two additional expressly stated constitutional interests other than the free “speech” mandate enumerated in the First Amendment, that is “free exercise [of religion]” and the “right of ... peaceabl[e] ... assembly].” U.S. Const., amend. I, cl. 1, 3.
Taking its cue from almost identical language in Olmer v. City of Lincoln, 192 F.3d 1176, 1182 (8th Cir.1999), Nixon, 545 F.3d at 692, recognized only a constitutionally protected right of privacy arising from inferences emanating within “the penumbras of the Bill of Rights,” Roe v. Wade, 410 U.S. 113, 152, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and relegates it to an inferior level of importance when balanced against “speech.” This, says the Nixon court, is because speech is “protected by the express words of the Constitution.” Nixon, 545 F.3d at 692 (emphasis added) (quoting Olmer, 192 F.3d at 1182). While this is likely a correct analysis of this limited inquiry under existing Supreme Court *491 precedent, it does not address my disaffinity for Nixon’s scrutiny analysis.
At the outset, I consider Nixon’s evaluation of Olmer and Olmer1 s purported support of Nixon’s result.
I do not believe that Olmer says that “the government has no compelling interest in protecting an individual from unwanted speech outside of the residential context” as contended by Nixon. Id. Clearly, Olmer, 192 F.3d at 1182, accords the home a “unique” status among other locations, reflecting that “[t]he State’s interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society,” Frisby v. Schultz, 487 U.S. 474, 484, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (quotation omitted). But, neither Frisby nor Olmer state that the government has “no compelling interest” in protecting individuals from unwanted speech under all other circumstances. Indeed, Hill v. Colorado, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), is to the contrary. While reinforcing the privacy of the home as a sanctuary against unwanted speech, Hill recognized protections from such speech in confrontational situations such as at health care facilities offering constitutionally sanctioned abortions. Id. at 717, 120 S.Ct. 2480. But, as above indicated, in Frisby, Olmer, and Nixon, the constitutional balancing test pitted freedom of speech as protected by express words of the Constitution, solely against a court-fashioned constitutionally protected right of privacy. Frisby, 487 U.S. at 484, 108 S.Ct. 2495, Olmer, 192 F.3d at 1182, Nixon, 545 F.3d at 692. I suggest that the limited nature of this encounter causes the Nixon judgment to fall short.
For example, the Supreme Court “has recognized [an expressive] right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.” Roberts v. United States Jaycees, 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Expressive association is protected as an instrument for the better protection of other First Amendment rights that are exercised most effectively when people are able to combine their voices. Roberts, 468 U.S. at 622, 104 S.Ct. 3244. Funerals are arguably such expressive events because they “are a sign of the respect a society shows for the deceased and for the surviving family members.” Nat’l Archives & Records Admin. v. Favish, 541 U.S. 157, 168, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004). Funerals are also, in most instances, deeply satisfying religious observances. This is especially true, I believe, when the deceased is one who has offered his or her life in our nation’s service without derogation of any kind, by word or deed, of any of the religious or other beliefs and proclivities of appellant and her fellow travelers.
To date, as best I can tell, guarding the right of expressive association has been limited to protecting these activities from government interference. However, the value of such group expression can be more fully and, I believe, constitutionally protected if the state shields such expression from private disruption under circumstances such as we have in this case. At least one court, in a somewhat different context, has said the state has an interest “in guaranteeing citizens the right to participate in events or demonstrations of their own choosing without being subjected to interference by other citizens.” Sanders v. United States, 518 F.Supp. 728, 730 (D.D.C.1981). The Supreme Court’s *492 latest foray into the matter of balancing these difficult issues, Snyder v. Phelps, — U.S. -, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011), does not counsel to the contrary. Even though Snyder involves tort claims against parties essentially identical to appellant in this case, arising from similar speech activities during a funeral at Westminster, Maryland, the Supreme Court addresses matters of relevance to this appeal. Although Maryland had no law similar to the Nebraska statute at the time of the events in Snyder, the Court said
“[e]ven protected speech is not equally permissible in all places and at all times.” [Frisby, 487 U.S. at 479, 108 S.Ct. 2495] (quoting Cornelius v. NAACP Legal Defense & Ed. Fund, Inc., 473 U.S. 788, 799, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). Westboro’s choice of where and when to conduct its picketing is not beyond the Government’s regulatory reach — it is “subject to reasonable time, place, or manner restrictions” that are consistent with the standards announced in this Court’s precedents. Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Maryland now has a law imposing restrictions on funeral picketing, Md. Crim. Law Code Ann. § 10-205, as do 43 other States and the Federal Government. ... To the extent these laws are content neutral [which is the case in Nebraska], they raise very different questions from the tort verdict at issue in this case. Maryland’s law [which now prohibits picketing within 100 feet of a funeral service], however, was not in effect at the time of the events at issue here, so we have no occasion to consider how it might apply to facts such as those before us, or whether it or other similar regulations are constitutional.
Id. at 1218 (first alteration in original) (emphasis added).
Accordingly, I believe that Snyder now opens the door for this circuit to look again at the issues presented in this litigation, and it should do so. While I concede that I am bound by Nixon’s precedent, I reject, as earlier indicated, Nixon’s limitations. I believe that it is constitutionally sound, in the balancing test we must make in a case such as this, to employ other expressly enumerated First Amendment rights as we decide whether to erect a constitutional shield for the family and friends of this deceased against the self-centered verbal and written thrusts of appellant in the name of free speech.