# United States Court of Appeals

## For the Eighth Circuit

_____

No. 25-1819

_____

Penguin Random House, LLC; Hachette Book Group, Inc.; HarperCollins Publishers, LLC; Macmillan Publishing Group, LLC; Simon & Schuster, LLC; The Authors Guild, Inc.; Laurie Halse Anderson; John Green; Malinda Lo; Jodi Picoult; Meggan Van Gundy, Next friend Grace Van Gundy; Iowa State Education Association; Lisa Petrie; Emily House

*Plaintiffs - Appellees*

v.

John Robbins, in his official capacity as President of the Iowa State Board of Education; McKenzie Snow, in her official capacity as Director of the Iowa State Board of Education; Chad Janzen, in his official capacity as Chair of the Iowa State Board of Educational Examiners

*Defendants - Appellants*

Jason Menke, in his official capacity as member of the Urbandale Community School District Board of Education; Rachel Kent, in her official capacity as member of the Urbandale Community School District Board of Education; Katherine Howsare, in her official capacity as member of the Urbandale Community School District Board of Education; Jenny Meade, in her official capacity as member of the Urbandale Community School District Board of Education; Josh Vanryswyk, in his official capacity as member of the Urbandale Community School District Board of Education; Carissa Williams, in her official capacity as member of the Urbandale Community School District Board of Education; Margaret Young, in her official capacity as member of the Urbandale Community School District Board of Education; Rosalie Daca, in her official capacity as Urbandale Community School District Superintendent; Justin Fletcher, in his official capacity as member of the Norwalk Community School District School Board of Directors; Brian Rausch, in his official capacity as member of the Norwalk Community School District School Board of Directors; Daniel Doerfler,

in his official capacity as member of the Norwalk Community School District School Board of Directors; Kate Baldwin, in her official capacity as member of the Norwalk Community School District School Board of Directors; Michelle Kelly, in her official capacity as member of the Norwalk Community School District School Board of Directors; Shawn Holloway, in his official capacity as member of the Norwalk Community School District School Board of Directors

*Defendant*s

------------------------------

America First Legal Foundation; State of Arkansas; State of Alabama; State of Alaska; State of Florida; State of Georgia; State of Idaho; State of Indiana; State of Kansas; State of Louisiana; State of Mississippi; State of Missouri; State of Montana; State of Nebraska; State of Oklahoma; State of South Carolina; State of South Dakota; State of Tennessee; State of Texas; State of Utah; State of West Virginia

*Amici on Behalf of Appellant(s)*

Freedom to Read Foundation; Iowa Library Association; American Association of School Librarians; American Booksellers for Free Expression; Association of American Publishers, Inc.; Comic Book Legal Defense Fund; Independent Book Publishers Association; Educational Book and Media Association; Freedom to Learn Advocates; Freedom to Learn Foundation; Half Price Books, Records, Magazines, Inc.; Science Fiction and Fantasy Writers Association; Sisters in Crime; PEN American Center, Inc.; Foundation for Individual Rights and Expression; Iowa Safe Schools, formerly known as GLBT Youth in Iowa Schools Task Force; Belinda Scarrott, Next friend P. B.-P.; Richard Carlson, Next friend A.C.; Ulrike Carlson, Next Friend A.C.; Eric Saylor, Next friend T.S.; Brigit Stevens, Next friend B.F.S.; Joseph Stevens, Next friend B.F.S.; Lara Newsom, Next friend B.F.; John Doe, Next friend James Doe; Daniel Gutmann; Alyson Telford; National Education Association

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

-2-

Before SMITH, ERICKSON, and KOBES, Circuit Judges.
_____

ERICKSON, Circuit Judge.

In December 2023, the district court entered a preliminary injunction enjoining enforcement of portions of Iowa law (Senate File 496) that require removal of books containing "descriptions or visual depictions of a sex act" from Iowa public school libraries and impose penalties on educators who do not comply with the law. See Iowa Code § 256.11(9), 256.11(19).[1] In a prior opinion, this Court vacated the injunction and remanded for analysis under Moody v. NetChoice, LLC, 603 U.S. 707 (2024). See GLBT Youth in Iowa Schs. Task Force v. Reynolds, 114 F.4th 660 (8th Cir. 2024).

On remand, the district court concluded there was no single standard of scrutiny applicable to restrictions on First Amendment rights in the school setting and relied on the obscenity standard as applied to minors discussed in Ginsberg v. State of N.Y., 390 U.S. 629 (1968), and the "substantial and reasonable government interest" test established by the plurality in Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico, 457 U.S. 853 (1982), adopted by this Court in Pratt v. Indep. Sch. Dist. No. 831, Forest Lake, Minn., 670 F.2d 771 (8th Cir. 1982). Under these standards, the court concluded Plaintiffs are likely to prevail in establishing the unconstitutional applications substantially outweigh the constitutional applications. The district court rejected application of the standard set forth in Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260 (1988)—that is, whether the book

_____

[1]Other provisions of Senate File 496 are challenged in a separate case. The district court's entry of a preliminary injunction in that case is also before us on appeal. See Iowa Safe Schools v. Reynolds, appeal No. 25-2186.

restrictions are "reasonably related to legitimate pedagogical concerns"—but acknowledged that if the Hazelwood standard applied, schools or a state legislature can categorically prohibit sexual content or profanity in school libraries without running afoul of the First Amendment. The Hazelwood standard applies to school activities that "may fairly be characterized as part of the school curriculum." Id. at 270-71, and a school library is such an activity. Thus, if school libraries are not government speech, no standard more exacting than Hazelwood applies. Because Plaintiffs are unable to show a likelihood of success on the merits, we vacate the preliminary injunction entered as to the library provisions in Senate File 496 and remand to the district court for resolution on the merits.

## I.    BACKGROUND

Senate File 496, in pertinent part, requires Iowa school districts to establish a library program, which contains "age-appropriate materials, and supports the student achievement goals of the total school curriculum." Iowa Code § 256.11(9). "Age-appropriate" is defined as "topics, messages, and teaching methods suitable to particular ages or age groups of children and adolescents, based on developing cognitive, emotional, and behavioral capacity typical for the age or age group." Id. at 256.11(19). The law expressly precludes the inclusion of "any material with descriptions or visual depictions of a sex act," as defined in Iowa Code § 702.17. Id.

Plaintiffs consist of the following groups:

1. Publishers;
2. Authors whose books have been removed from school libraries;
3. Educators working as school librarians or as teachers;
4. The Iowa State Education Association;
5. The Authors Guild, Inc.; and
6. A mother on behalf of her daughter, a high school student, who alleges the law has prevented her from checking out books that she otherwise would have read.

For relief, they seek a preliminary injunction, a permanent injunction, and a declaratory judgment finding the library restrictions are unconstitutional.

On remand, Plaintiffs chose not to pursue injunctive relief on an as-applied basis. They have waived or forfeited this basis for injunctive relief. After analyzing the facial challenge, the district court granted a preliminary injunction, enjoining the State from enforcing the provisions of Senate File 496 that require the removal of books from school libraries that are not "age-appropriate." This appeal follows.

## II.    DISCUSSION

This Court reviews the district court's legal conclusions granting a preliminary injunction *de novo*, its factual findings for clear error, and its application of the law to the facts for abuse of discretion. Cigna Corp. v. Bricker, 103 F.4th 1336, 1343 (8th Cir. 2024). A plaintiff seeking to enjoin a state statute must show not merely "a fair chance" that it will succeed on the merits, but that it "is likely to prevail on the merits." Bio Gen LLC v. Sanders, 142 F.4th 591, 600 (8th Cir. 2025) (cleaned up). This more rigorous standard is applied to "ensure that preliminary injunctions that thwart a state's presumptively reasonable democratic processes are pronounced only after an appropriately deferential analysis." Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 733 (8th Cir. 2008) (en banc).

Within the subclasses of plaintiffs, two distinct interests are at play: (1) a student's right to receive information, and (2) publishers' and authors' right to communicate with their intended audience. As to the first category, the removal of a book from a school library does not prevent a student from "receiving" the information. See Little v. Llano Cnty., 138 F.4th 834, 837 (5th Cir. 2025) (overruling prior precedent suggesting students may be able to challenge the removal of a book from public school libraries and explaining a library's collection decisions are government speech); Pico, 457 U.S. at 915 (Rehnquist, J., dissenting) (noting "the most obvious reason" students are not denied access to a book by its removal from a school library is "the ready availability of the books elsewhere"). The First

Amendment does not guarantee students the right to access books of their choosing at taxpayer expense. See Walls v. Sanders, 144 F.4th 995, 1003 (8th Cir. 2025) ("Students do not possess a supercharged right to receive information in public schools[.]").

To the extent Plaintiffs' arguments or the district court's decision finding that students have a right to receive books in a school library rest on Pico's plurality opinion, this Court has held that Pico lacks any holding on First Amendment issues because the narrowest grounds for the judgment was Justice White's opinion, which did not decide any constitutional questions. Id. at 1003-04 (quoting Marks v. United States, 430 U.S. 188, 193 (1977)). Other Circuits have similarly held that Pico has no precedential weight as to application of First Amendment principles. Llano Cnty., 138 F.4th at 943-44; Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd., 557 F.3d 1177, 1200 (11th Cir. 2009) (same). Further, we are bound by this Court's decision last year concluding Pratt, 670 F.2d 771, which relied on Pico to find a First Amendment violation, has been abrogated by subsequent Supreme Court decisions. Walls, 144 F.4th at 1006. Plaintiff Meggan Van Gundy, mother of Urbandale High School student G.V.G., is unlikely to succeed on the merits of her right to receive information claim.

The publishers' and authors' First Amendment claim is not as straightforward due to the various categories of speech that occur within a school setting. At one end of the spectrum is student speech occurring on school premises, which is governed by Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503 (1969), and not at issue in this case. At the other end is government speech, which the First Amendment's free speech clause does not restrict. Walls, 144 F.4th at 999. In its prior opinion in this case, the Court noted the Supreme Court's directive to "exercise great caution" prior to extending government speech and expressed doubts that the public would view the placement and removal of school library books as the government speaking. GLBT Youth, 114 F.4th at 668. Between student speech and government speech is a third category consisting of "school-sponsored" speech,

which consists of expressive activity that a school affirmatively promotes as opposed to speech that it tolerates. Hazelwood, 484 U.S. at 270-71.

In articulating the boundaries of school-sponsored speech, the Supreme Court explained that "expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school" constitute school-sponsored speech, over which a school can exercise editorial control, "so long as [its] actions are reasonably related to legitimate pedagogical concerns." Id. at 271, 273. Activities that may be characterized as part of the school curriculum, whether or not they occur in a traditional classroom setting, are those that "are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences." Id. at 271. It is indisputable that the purposes of a school library are to enhance education, supplement classroom learning, and facilitate the development of students' knowledge and skills. A school library is curated by school officials, educators, librarians, or perhaps some combination of these people. It is supervised by educators and librarians. Given these aspects, under Hazelwood, a school library bears the imprimatur of the school and is properly characterized as part of the school's curriculum.

The book restrictions in Senate File 496 address legitimate pedagogical concerns. The law requires schools to curate a library with "age-appropriate materials" that support the school's curriculum and student achievement goals. The law prohibits school libraries from including any material with "descriptions" or "visual depictions" of a "sex act." Librarians and educators do not have to import their view or understanding of sex act, as this term is expressly defined under Iowa law. Even so, Plaintiffs contend the law is so amorphous that it is difficult to apply and requires librarians and teachers to make judgment calls. Similarly, the district court found Plaintiffs made "credible arguments" about "the unreasonableness of the law." We find these contentions unavailing. The plain language of the statute prohibits books containing "descriptions" or "visual depictions" of six categories of specified sex acts. The specified sex acts are detailed under Iowa law. See Iowa Code § 702.17. The library restrictions are neither amorphous nor unreasonable.

-7-

Both the Supreme Court and this Court have held that schools have a legitimate pedagogical interest in prohibiting speech involving sexual content. See, e.g., Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 685 (1986) (noting a high school assembly or classroom is no place for a sexually explicit monologue and the First Amendment does not prevent school officials from imposing disciplinary sanctions); Henerey ex rel. Henerey v. City of St. Charles, Sch. Dist., 200 F.3d 1128, 1135-36 (8th Cir. 1999) (concluding sophomore student's distribution of condoms as part of his campaign for junior class president carried with it the implied imprimatur of the school and the principal did not violate student's First Amendment rights by disqualifying student for his conduct that ran counter to the school's pedagogical concern and educational mission); Lacks v Ferguson Reorganized Sch. Dist. R-2, 147 F.3d 718, 724 (8th Cir. 1998) (holding that, as a matter of law, the school board has a legitimate academic interest in prohibiting profanity by students, even in their creative writing, and school district's discipline of a teacher who failed to enforce the rules and policies did not violate the First Amendment).

In the context of school-sponsored speech, actions "reasonably related to legitimate pedagogical concerns" do not run afoul of the First Amendment. Hazelwood, 484 U.S. at 273. As explained by the Hazelwood Court, federal judges are not tasked with the responsibility of educating the Nation's youth. Id. Only when a decision to censor a school-sponsored "vehicle of student expression has no valid educational purpose that the First Amendment is so directly and sharply implicated as to require judicial intervention[.]" Id. (internal quotation and citation omitted). Even under a standard less strict than government speech, the selection of books in a school library implicates school-sponsored speech, and the Iowa legislature's action relating to the curation of school libraries is reasonably related to legitimate pedagogical concerns. For these reasons, the publishers and authors are unlikely to succeed on the merits of their First Amendment claim.

In a First Amendment case, the likelihood of success on the merits is "often the determining factor in whether a preliminary injunction should issue." Phelps-Roper v. Nixon, 545 F.3d 685, 690 (8th Cir. 2008), overruled on other grounds by

Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678 (8th Cir. 2012) (en banc). Because Plaintiffs have not shown a likelihood of success on the merits, the district court abused its discretion when it granted their motion for a preliminary injunction.

## III. CONCLUSION

For the foregoing reasons, we vacate the district court's preliminary injunction and remand for resolution on the merits.

_____